**K MART CORPORATION, Appellant,**

v.

**Allie Louise RHYNE and Curtis
Olin Rhyne, Sr., Appellees.**

No. 06–95–00042–CV.

Court of Appeals of Texas,
Texarkana.

June 4, 1996.

J. Gene Bailey, Longview, for appellant.

John Graves, Sloan & Price, Longview, for appellees.

Before CORNELIUS, C.J., and GRANT, J.[1]

## OPINION

GRANT, Justice.

This is a premises liability case in which the appellee, Allie Louise Rhyne, slipped and fell in the appellant's store (K Mart Corporation) in Longview, Texas, on March 7, 1991. Allie Rhyne and her husband, Curtis Olin Rhyne, brought a negligence suit against K Mart, and the jury awarded damages in the amount of $200,000. Because the jury found K Mart ninety-five percent negligent and Allie Rhyne five percent negligent, her damages were reduced to $190,000. The jury also awarded $10,500 in damages to her husband. Both were also awarded prejudgment interest.[2]

---

1. Justice Charles Bleil was a member of the Court when this case was argued and submitted, and participated fully in the consideration of this case, but resigned from the Court before the opinion was issued.

2. Prejudgment interest was included in the trial court's judgment pursuant to TEX.REV.CIV. STAT. ANN. art. 5069–1.05 (Vernon Supp.1996). Rhyne's prejudgment interest amounted to $65,-812.33. Her husband's prejudgment interest amounted to $3,872.80.

On March 7, 1991, Rhyne was shopping in the garden section of the Longview K Mart when she tripped and fell on a three-inch metal plate protruding from the concrete floor. The metal plate on which Rhyne fell was embedded in the middle of the concrete walkway and was used to hold a pipe that ran between the concrete and the fence to stabilize the fence. She blacked out after she fell. When she awoke, she could not move, and her foot was caught underneath the metal plate upon which she had stumbled. After she freed her foot, she crawled several feet and collapsed. Rhyne sustained injuries to her face, neck, and back.

Sharon Moore, the assistant manager on duty at the time of Rhyne's fall, was summoned by another employee. Moore filled out an accident report with Rhyne, listing the cause of Rhyne's fall as "inadequate guard of fence." Moore admitted that the metal plate was a dangerous and hazardous condition and that it was K Mart's responsibility to repair the condition.

Rhyne's husband testified that he has been under stress seeing his wife in pain every day and that the two of them have not slept together since Rhyne's accident. He also testified that he must now perform what were previously his wife's household duties, such as cooking and gardening. Finally, he testified that the two are not able to travel in his retirement years, as they had planned before his wife's injuries.

Dr. Roy Randall Northcutt, a chiropractor, testified that Rhyne has a very limited range of motion in her neck and that her condition is permanent. Dr. Frank R. Jackson, Rhyne's family doctor, testified via videotape that Rhyne will continue to have medical problems in the foreseeable future.

■ By its first point of error, K Mart contends that the trial court erred in rendering judgment on the verdict because the evidence was legally insufficient to support the jury's answer to question one, which addressed K Mart's negligence. Because K Mart did not have the burden of proof on this issue, it must demonstrate on appeal that there was no evidence to support this finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58

(Tex.1983). In reviewing a no evidence point, we consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex. 1992); *E–Z Mart Stores, Inc. v. Hale,* 883 S.W.2d 695, 699 (Tex.App.—Texarkana 1994, writ denied). If there is any probative evidence to support the finding, we must uphold the verdict. *Southern States Transportation, Inc. v. State,* 774 S.W.2d 639, 640 (Tex. 1989); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987) (stating that if there is "more than a scintilla of evidence" to support the finding, a no evidence point fails); *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

The Texas Supreme Court listed the elements in a premises liability negligence case as follows:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983).

■ K Mart argues that there was legally insufficient evidence for the jury to infer K Mart's actual or constructive knowledge of the condition which injured Rhyne. Moore, the assistant manager on duty the day of Rhyne's accident, testified that no one had previously been hurt on the metal plate and that K Mart had no previous notice of the condition. Moore also testified, however, that the most probable explanation for the condition was that a K Mart employee in a fork truck broke the pipe while setting tables

in the garden area.[3] Moore further testified that to dislodge the pipe, the employee would had to have hit it with great force and, therefore, should have assessed the situation after the impact.

K Mart argues that the evidence is legally insufficient because a jury had to have stacked inferences to come to this conclusion, citing *McClure v. Allied Stores of Texas,* 608 S.W.2d 901, 904 (Tex.1980). The Texas Supreme Court has also held, however, that a number of inferences may be drawn from a single fact situation. *McClure,* 608 S.W.2d at 904; *see also Farley v. M M Cattle Co.,* 529 S.W.2d 751, 757 (Tex.1975).

Whether inferences are stacked is often a matter of semantics, and thus depends upon the wording of the inference. The ultimate test on any inference should be its reasonable probability.

In the first place, these conclusions were not based solely on inferences made by the jury, but were founded upon direct opinion evidence by the K Mart assistant manager. The present case is analogous to the case of *Coffee v. F.W. Woolworth Co.,* 536 S.W.2d 539 (Tex.1976). In the *Coffee* case, the Supreme Court concluded that there was sufficient evidence to support the jury finding that the defendant store owner created the condition based upon the testimony of a supervisor in the defendant store. The supervisor testified that the only two possible causes of the condition both involved store personnel. (In the present case, the assistant manager on duty at the time of the accident testified that the probable cause of the condition was that a K Mart employee broke the pipe with a fork truck.) In the *Coffee* case, the court concluded that the evidence created a reasonable inference for the jury that the defendants had caused the condition and therefore had actual notice. (In the present case, there was evidence from which the jury could have concluded that the defendant caused the condition and therefore had actual notice of the condition.)

The jury did not have to make an inference that an employee was actually aware of the pipe being broken, but only that the K Mart employee working in that area should have known of the condition. The jury found that Allie Rhyne was five percent negligent based upon the pleadings and evidence presented by K Mart concerning her failure to keep a proper lookout. If the jury determined that there was some negligence on the part of Allie Rhyne, a customer coming down the aisle, then the jury also certainly had a basis to believe that K Mart employees, working in that area of the store, should have known of the condition, because the workers, by spending more time in the store, would have more opportunities to observe the situation and to recognize the change that had been created by the broken pipe.

In the present case, as in the *Farley* case, the inference that the jury had to draw was based on direct evidence admitted at trial. *See Farley,* 529 S.W.2d at 757. There was observable physical evidence of the pipe, broken from the metal plate, which extended three inches from the floor. When the pipe was extended from the metal plate to the fence, it provided an obvious barrier that called attention to the obstacle. After the pipe was separated, it no longer extended into the air above the plate to the fence and left only the metal plate protruding from the floor, which was not an obvious obstacle. From the physical evidence, an inference could be made that the pipe had been broken off from the metal plate by something or someone requiring considerable force, which would have been obvious to anyone involved in the breaking.

The other contended inference came from the opinion evidence of the K Mart employee. It is drawn from the totality of the circumstances and the personal knowledge of the assistant manager. She gave direct testimony that a K Mart employee had been working in that area with a fork truck, and she concluded that it was probable that this K Mart employee knocked the pipe down with the fork truck. Furthermore, even if these were improper inferences, a jury could have concluded because of the physical condition of the plate extended up from the floor three inches in the middle of an aisle that the K

3.  Moore testified that "[t]he only—it probably got   broken setting the tables with the fork truck."

Mart employees either knew or should have known of the dangerous condition.

K Mart also contends that there was legally insufficient evidence for the jury to find the third element, i.e., that the owner/operator did not exercise reasonable care to reduce or eliminate the risk. It was undisputed, however, that the condition was hazardous when Rhyne fell and that K Mart did not repair the condition until after Rhyne fell. Therefore, the jury could have concluded that K Mart did not exercise reasonable care to reduce or eliminate the risk of harm to its customers after notice of the condition. This point of error is therefore overruled.

By its second and third points of error, K Mart contends that the trial court erred in rendering judgment on the verdict because the evidence was factually insufficient to support the jury's answer to question three (amount of damages to Ms. Rhyne), and question four (amount of damages to Mr. Rhyne). K Mart contends that the jury's award of $200,000 in damages was factually insufficient because the damage award included future damages, which K Mart argues were not proven by a reasonable probability.

■ In reviewing a factual sufficiency challenge, we must examine all of the evidence presented at trial and may set aside the finding only when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 244 S.W.2d at 661; *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 590 (Tex.App.—Texarkana 1992, writ denied).

■ Because personal injury damages are unliquidated and are not capable of certain measurement, the jury has broad discretion in assessing the amount of damages in a personal injury case. *Transit Management Co. of Laredo v. Sanchez,* 886 S.W.2d 823, 826 (Tex.App.—San Antonio 1994, no writ); *Baylor Medical Plaza Services v. Kidd,* 834 S.W.2d 69, 78 (Tex.App.—Texarkana 1992, writ denied); *Pipgras v. Hart,* 832 S.W.2d 360, 366 (Tex.App.—Fort Worth 1992, writ denied); *Kansas City Southern Railway Co.*

*v. Catanese,* 778 S.W.2d 114, 119 (Tex.App.—Texarkana 1989, writ denied).

■ Likewise, recovery for future medical expenses is primarily a matter for the jury to determine in its discretion. *Strahan v. Davis,* 872 S.W.2d 828, 832 (Tex.App.—Waco 1994, writ denied); *Berry Property Management v. Bliskey,* 850 S.W.2d 644, 664 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.); *Hughett v. Dwyre,* 624 S.W.2d 401, 405 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). Recovery for future medical expenses requires a showing that there is a reasonable probability that such medical expenses will be incurred in the future. *Fisher v. Coastal Transport Co.,* 149 Tex. 224, 230 S.W.2d 522, 523 (1950); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 681 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993). Expert testimony, however, is not required. *Strahan,* 872 S.W.2d at 832; *Hughett,* 624 S.W.2d at 405; *see also Bliskey,* 850 S.W.2d at 664 (stating that the jury may estimate both the necessity of future medical treatment and the cost of such treatment).

■ In the present case, the jury was given a broad-form damage submission consisting of both past and future medical damages for the following:

• physical pain and mental anguish;

• physical impairment; and

• medical care.

The jury was not asked to specify the amount of damages for each damage element. The jury has great discretion in awarding damages in a personal injury case for pain and mental anguish. *Kidd,* 834 S.W.2d at 78; *Exxon Corp. v. Roberts,* 724 S.W.2d 863, 868 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.); *George C. Vaughan & Sons v. Dyess,* 323 S.W.2d 261, 264–65 (Tex.Civ.App.—Texarkana 1959, writ dism'd). Thus, the jury could have awarded the entire amount on the basis of past and future pain and suffering. *See Kidd,* 834 S.W.2d at 79 (on motion for rehearing). There was evidence to support the jury's damage award to Rhyne. The jury's verdict is therefore not so contrary to the overwhelming weight of

the evidence as to be clearly wrong and unjust. This point of error is overruled.

■ By its third point of error, K Mart contends that the evidence was factually insufficient to support the jury's award of $10,500 in loss of consortium damages to the husband. The jury has discretion in awarding loss of consortium damages. *See Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978) (stating that the duty to compensate for loss of consortium must be resolved by the "impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence").

■ K Mart does not, however, argue this point in its brief. The only reference regarding Rhyne's husband in this portion of K Mart's brief details his testimony as it related to his wife's injuries. Based on TEX. R.APP. P. 74, an appellant waives any issue not supported by argument and authority in his or her brief. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 452–53 (Tex.1978). Furthermore, there was sufficient evidence in the record to support this award. Rhyne's husband testified that he has been under stress seeing his wife in pain everyday and has not been able to sleep with his wife since her injury. He also testified that he must now perform what were previously his wife's household duties, such as cooking and gardening. Finally, he testified that the two are not able to travel in his retirement years as they had planned before his wife's injuries. Therefore, the jury's award of $10,500 in damages to the husband is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

■ K Mart alternatively contends that the trial court erred in refusing to order a remittitur. In reviewing a request for a remittitur, the proper standard is factual sufficiency. *Kansas City Southern Railway Co. v. Carter*, 778 S.W.2d 911, 915 (Tex.App.— Texarkana 1989, writ denied). The appellate court will examine all of the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient as to be manifestly unjust. *Pope v. Moore*, 711 S.W.2d 622, 623–24 (Tex.1986); *Carter*, 778 S.W.2d at 915.

The jury's determination was not so factually insufficient as to be manifestly unjust. Therefore, the trial court did not err in refusing to order a remittitur. This point of error is overruled.

■ By its fourth point of error, K Mart contends that the trial court erred in failing to modify, correct, or reform the judgment as it relates to prejudgment interest. First, K Mart argues that the trial court used the incorrect date of accrual of prejudgment interest.

The Texas statute dealing with prejudgment interest in a personal injury case states that interest shall begin 180 days after the defendant receives written notice of the plaintiff's claim. TEX.REV.CIV. STAT. ANN. art. 5069–1.05 § 6(a) (Vernon Supp.1996). The court ordered that the prejudgment interest would begin 180 days after Rhyne executed a release to K Mart for her medical records on March 27, 1991. K Mart contends that this is not sufficient to constitute notice of a claim as required by the statute. K Mart argues that the appropriate date for prejudgment interest to begin is 180 days after Rhyne provided written notice to a K Mart claims agent on April 22, 1992.

A recent Austin appellate court opinion states that written notice of an accident and injuries is not sufficient to constitute notice of a claim under the prejudgment interest statute. *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex.App.—Austin 1995, writ denied). *Robinson* requires written notice of a claim, i.e., a legal demand for payment or compensation. *Robinson*, 894 S.W.2d at 528. The court in *Robinson*, however, recognized that it was deciding an issue of first impression. *Robinson*, 894 S.W.2d at 528.

The Fort Worth appellate court also recently addressed this issue in *Bevers v. Soule*, 909 S.W.2d 599, 603–604 (Tex.App.— Fort Worth 1995, n.w.h.), where it concluded that a signed medical authorization form, coupled with a letter asking the company to "properly consider [plaintiff's] claim," was

sufficient to constitute notice under this statute. *Bevers*, 909 S.W.2d at 603. K Mart distinguishes this case on the basis that Rhyne made no similar request with her medical release form. Rhyne's release, prepared by K Mart, indicates, however, that "[t]his information is to be used for purposes of evaluating and handling *my claim for injury* as a result of an accident occurring on or about 3–7–91." (Emphasis added.) This notice is comparable to that given in *Bevers* and was sufficient to give notice to K Mart of Rhyne's claim for compensation for her injuries.

■ Secondly, K Mart argues that the trial court erred in compounding the prejudgment interest because the statute authorizing prejudgment interest specifically requires simple interest.[4] Article 5069–1.05 provides that "[t]he rate of prejudgment interest shall be the same as the rate of post-judgment interest at the time of judgment and *shall be computed as simple interest.*" Tex.Rev.Civ. Stat. Ann. art. 5069–1.05, § 6(g) (Vernon Supp.1996) (emphasis added); *see also Bevers*, 909 S.W.2d at 603–04.[5]

Rhyne argues that this section was modified by section 2 of the same statute which states that all judgments earn interest "compounded annually." Tex.Rev.Civ. Stat. Ann. art. 5069–1.05, § 2 (Vernon Supp.1996). Section 2, however, deals with postjudgment interest, not prejudgment interest. *Id.* Because the plain language of Section 6(g) requires prejudgment interest to be computed as simple interest, this point of error is sustained.

■ By its final point of error, K Mart argues the trial court erred in admitting evidence from Dr. Roy Randall Northcutt, which he was incompetent to render. K Mart complains that Dr. Northcutt, a chiropractor, estimated the cost of future surgeries Rhyne might need. K Mart asserts that a chiropractor is not competent to testify as to the costs of surgeries.

In support of this contention, K Mart cites a recent Texas Supreme Court case holding that courts should more closely scrutinize expert witness testimony before allowing it into evidence. *E.I. du Pont de Nemours and Co. v. Robinson*, —— S.W.2d ——, 38 Tex. S.Ct. J. 852 (June 15, 1995) (stating that an expert's opinion must be based upon a reliable foundation). K Mart argues that because there was no showing that a chiropractor was qualified to opine about cost of surgical treatment, this evidence was improperly admitted. *See* Tex.R. Civ. Evid. 702. We agree.

■ We can only reverse based on this error, however, if this error amounted to such a denial of K Mart's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex.R.App. P. 81(b)(1). As stated in point of error two, this Court cannot ascertain the amount of future medical damages awarded by the jury in this case because the damages were submitted by a broad-form question and also included pain and suffering, physical impairment, and past medical care. The other damages could have amounted to this total without the cost of surgical treatment.

On rehearing, K–Mart contends that the record reflects that the chiropractor's testimony as to future medical expenses probably had an effect on the jury's verdict. K–Mart states that the opposing counsel had emphasized the cost of future surgeries in the final argument and that he had asked for $395,000 in damages of which the cost of the future medical expenses amounted to more than forty percent. It must be pointed out, however, that the jury did not award the $395,-000 argued for by counsel, but instead

---

4. In a previous opinion, this Court held that prejudgment interest under this statute should be compounded annually pursuant to Section 3 of this Article 5069–1.05. *See Sadler v. Duvall*, 815 S.W.2d 285, 294 (Tex.App.—Texarkana 1991, writ denied). This opinion, however, dealt with a case occurring before the Legislature amended Section 6(g) to require simple interest. *See Sadler*, 815 S.W.2d at 294.

5. In *Bevers*, the Fort Worth Court asserted that this Court wrongly decided *Sadler*. *Bevers v. Soule*, 909 S.W.2d 599 (Tex.App.—Fort Worth 1995, n.w.h.). The Fort Worth Court failed to recognize, however, that *Sadler* dealt with a case that occurred before the Legislature amended Section 6(g) of Article 5069–1.05 to require simple interest. *See Sadler*, 815 S.W.2d at 294.

awarded $200,000. It should further be pointed out that in addition to the argument for the cost of future medical expenses, counsel for Rhyne placed a great deal of emphasis and spent considerable time in discussing pain and suffering, mental anguish, and physical impairment that had resulted from the injury. In argument, counsel asked the jury to award $215,000 for pain and suffering, mental anguish, and physical impairment. Therefore, the $200,000 awarded by the jury may have been to cover pain and suffering, mental anguish, and physical impairment and not the cost of future medical expenses. The finding of harm is not to be based upon speculation, but on whether the error probably did cause the rendition of an improper judgment. We can only say that it was possible. We do not find that it was probable that the jury included the future medical expenses as a part of the damages. Because the jury could have awarded the entire amount on the basis of elements other than the cost of future medical expenses,[6] no harmful error has been presented to this Court.

While there is much virtue in the simplicity of the broad-form submission, the courts are deprived in many situations of determining with exactitude what the jury found. This is especially true in lumping of all damages together because it renders the trial court and the reviewing court helpless in knowing which damages were actually awarded. This point of error is overruled.

Based on our disposition of K Mart's fourth point of error, the prejudgment inter-

est awards are reformed to $70,211 [7] for Allie Rhyne and $3,905 [8] for Curtis Rhyne. The judgment of the trial court is otherwise affirmed.

---

**6.** *See Baylor Medical Plaza Services v. Kidd,* 834 S.W.2d 69, 79 (Tex.App.—Texarkana 1992, writ denied)(on motion for rehearing); *see also Transit Management Co. of Laredo v. Sanchez,* 886 S.W.2d 823, 826 (Tex.App.—San Antonio 1994, no writ) (stating that the valuation of mental anguish damages are generally left to the trier of fact); *Pipgras v. Hart,* 832 S.W.2d 360, 366 (Tex. App.—Fort Worth 1992, writ denied) (noting that future physical pain and mental anguish damages are left to the jury's discretion).

**7.** This amount was calculated as follows:

First three years (3/27/91—3/27/94), 10% of $190,000 per year × 3 = $57,000.
For partial year (3/27/94—2/24/95), 10% of $190,000 for 334 days = $17,386.
Total interest is $57,000 + $17,386 = $74,386.

The parties agreed to reduce this amount based upon settlement offers K Mart made to Rhyne. Accordingly, $4,175 was subtracted from the above amount of $74,386 to reach a final figure of $70,211.

**8.** This amount was calculated in the same manner as above, except on a principal amount of $9,975, resulting in the amount of $3,905 in interest to be paid. Because K Mart made no settlement offers to Curtis Rhyne, no deductions apply.