**Janet K. MOORE, Appellant,**

v.

**K MART CORPORATION d/b/a K Mart Super Center, Appellee,**

No. 04–97–01039–CV.

Court of Appeals of Texas, San Antonio.

June 24, 1998.

Rehearing Overruled July 27, 1998.

Andy Cline, Law Offices of Andy Cline, San Antonio, for Appellant.

Willie Ben Daw, III, Shawna Hamilton, Daw & Ray, P.C., Houston, for Appellee.

Before HARDBERGER, C.J., RICKHOFF and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

Appellant, Janet K. Moore ("Moore"), appeals the trial court's summary judgment granted in favor of K Mart Corporation d/b/a K Mart Super Center ("Kmart"). Moore brought suit against Kmart for the personal injuries she allegedly sustained when she tripped and fell on Kmart's premises. Kmart filed a no-evidence motion for summary judgment, asserting that there was no

evidence that a dangerous condition existed on its premises or, alternatively, there was no evidence that Kmart had actual or constructive knowledge of any such condition.

## PROCEDURAL HISTORY

■ Moore filed suit against Kmart on September 11, 1996. In her petition, Moore alleged that on April 8, 1996, she was walking to the photograph counter when she tripped and fell where the carpet and floor tile inside Kmart's store was separated by a black rubber border. Moore contended that the carpet area next to the border depressed lower than the border when she stepped onto the carpet, causing her to trip on the border. Moore asserted that the depression of the carpet in this manner was a condition on Kmart's premises that posed an unreasonable risk of harm to her, and Kmart had actual or constructive knowledge of the condition. Moore further contended that one of Kmart's employees created the condition by pushing shopping carts across the border.[1] Moore concluded that the condition proximately caused her fall, resulting in her injury.

On September 18, 1997, Kmart moved for summary judgment under rule 166a(i) of the Texas Rules of Civil Procedure. Kmart asserted that no evidence of any dangerous condition existed. If the court found that such a condition did exist, Kmart argued in the alternative that it did not have actual or constructive knowledge of such a condition. Although not required by the rule, Kmart attached deposition excerpts in support of its position.

The first excerpt attached to Kmart's motion was from Moore's deposition. Moore testified that on the date that she fell, she did not go back and see what had caused her to trip and she did not tell anyone that the border had caused her to fall. Moore stated that she knew the black border caused her to trip because there was "nothing else there."

The second excerpt attached to Kmart's motion was from the deposition of Estella Duque, the Kmart employee to whom Moore reported the incident several days later. Duque stated that she personally inspected the carpet and did not see anything wrong with the border. Duque stated that she could not move the border with her hand, and the border did not move even after she kicked it with her foot.

In response to Kmart's motion, Moore filed the following summary judgment evidence: (1) her opposing affidavit; (2) excerpts from her deposition; and (3) excerpts from two other Kmart employees' depositions, together with an exhibit from one of those depositions. In her affidavit, Moore stated that she returned to the store three days after her fall and stepped on the carpet by the black border where she fell. Moore further stated that the depression of the carpet at least one half inch below the black border caused her to stumble because there was nothing else in the area that could have caused her fall. Two weeks after her fall, Moore again returned to the store and noticed the black border was pulled away from the carpet in the shopping cart area, which was 18–20 feet from where she fell. Because dust and debris were on the tile floor where the border had pulled away from the carpet, Moore believed the black border had been pulled away for at least two weeks. Moore contended that the border being pulled away from the carpet created the same condition that had caused her to fall. In her deposition, Moore stated that she could tell that the border had been pulled away from the carpet in the shopping cart area for some time because there were footprints on the exposed tile area.

Moore also relied upon excerpts from the depositions of Derrick Hayes and Robert Bender, who were both Kmart employees. Hayes stated that the carpet and floor tile were inspected by taking a couple of shopping baskets and running them over the edging every other day. Bender testified that

1. Although this allegation appears to assert a negligent activity claim, recovery on a negligent activity theory requires injury as a contemporaneous result of the activity itself, rather than a condition created by the activity. *Keetch v. Kro-* *ger Co.*, 845 S.W.2d 262, 264 (Tex.1992). A negligent activity theory is not applicable under the facts alleged in this case and was not presented during oral argument.

the carpet had pulled away from the border in the shopping cart area. Bender stated that the condition was caused by the carts pushing against the border as they were turned into the shopping cart area. Bender estimated that the condition had existed for two days, and when he noticed it, he pushed the border back under the carpet because it was still tacky. Bender stated that other than this one occurrence, he had never seen this condition on the border. Bender also admitted that another person had reported tripping or stumbling at the border area in August of 1996, and when Bender inspected the area, he saw that the border had slightly separated from the carpet.

## STANDARD OF REVIEW

■■■ "A no-evidence summary judgment is essentially a pretrial directed verdict," and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. Judge David Hittner and Lynne Liberto, *No–Evidence Summary Judgments Under the New Rule, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Connell v. Connell*, 889 S.W.2d 534, 538 (Tex.App.— San Antonio 1994, writ denied). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); Judge David Hittner and Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997); *see also Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d at 711.

Having set forth the standard we must apply in reviewing a no-evidence summary judgment, we must further understand the meaning of the terms "genuine" and "material fact," as they are used in rule 166a(i). For clarification of these terms, we turn to federal law. *See* Judge David Hittner and Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997).

■■■ Materiality is a criterion for categorizing factual disputes in relation to the legal elements of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The materiality determination rests on the substantive law, and only those facts identified by the substantive law to be critical are considered material. *See id.* Stated differently, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

■■■ A material fact issue is genuine if the evidence is such that a reasonable jury could find the fact in favor of the non-moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence simply shows that some metaphysical doubt as to the fact exists, or if the evidence is not significantly probative, the material fact issue is not "genuine." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505; *Matsushita Electric Industrial Co., Ltd.*, 475 U.S. at 587–88, 106 S.Ct. 1348.

## DISCUSSION

■■■ The elements in a premises liability negligence case are as follows:

(1) Actual or constructive knowledge of some condition on the premises;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996). With regard to Moore's claim, Kmart's motion for summary judgment asserted that there was no evidence of the following elements: (1) the existence of a condition that posed an unreasonable risk of harm; and (2) actual or constructive knowledge of the condition.

### 1. Condition Posing Unreasonable Risk of Harm

■ Viewing the evidence in the light most favorable to Moore, Moore stated that she tripped over the border separating the floor tile and carpet. Three days after she fell, she went back to the store, stepped on the carpet by the border where she fell, and the carpet depressed at least one half inch below the border. Moore stated that if the border had been under the edge of the carpet, the carpet would not have depressed, and she would not have stumbled and fallen. Although a Kmart employee testified that she did not discover such a condition when she inspected the area, we must disregard her testimony as contrary. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706. The Kmart employee designated as safety coordinator was responsible for checking the border by running shopping carts over the edging or border throughout the store every other day. One Kmart employee testified that when the carpet is pulled away from the border it is a potential trip hazzard.

Moore testified that the carpet depressed because the border was not under the edge of the carpet. Moore's testimony that this condition existed at the location where she fell three days after her fall is evidence that "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions" with respect to whether the condition existed at the time Moore fell. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d at 711. Moore's testimony, coupled with the Kmart employees' actions and testimony that recognize this condition to be a potential trip hazzard, is some evidence that a condition existed that posed an unreasonable risk of harm.

### 2. Actual or Constructive Knowledge of the Condition

■ Moore relies on the Texarkana court's decision in *K Mart Corp. v. Rhyne,* 932 S.W.2d 140 (Tex.App.—Texarkana 1996, no writ), in support of her contention that Kmart had actual or constructive knowledge of the condition. In *Rhyne,* the plaintiff slipped and fell on a three-inch metal plate protruding from the concrete floor. *Id.* at 142. The metal plate was embedded in the middle of a concrete walkway and was used to hold a pipe that ran between the concrete and the fence to stabilize the fence. *Id.* The assistant manager, who completed an accident report, admitted that the metal plate was a dangerous and hazardous condition and that it was Kmart's responsibility to repair the condition. *Id.*

The case was tried to a jury, which awarded damages to the plaintiff. *See id.* at 141. On appeal, Kmart argued that there was legally insufficient evidence for the jury to infer Kmart's actual or constructive knowledge of the condition that injured the plaintiff. *Id.* at 142. The appellate court noted that the assistant manger testified that the most probable explanation for the condition was that a Kmart employee in a fork lift truck broke the pipe while setting tables in the garden area. *Id.* at 142–43. The assistant manager further testified that the employee must have hit the pipe with great force to dislodge it and, therefore, should have assessed the situation after the impact. The Texarkana court held that the jury could have inferred actual or constructive knowledge from the assistant manager's testimony that the Kmart employee working in the area should have known of the condition based on the likely cause of the condition or from the physical condition of the metal plate itself, which extended three inches up from the floor in the middle of the aisle. *See id.* at 143.

In this case, there is no evidence Kmart had actual knowledge of the condition. How-

ever, in order for Kmart to prevail in a no-evidence summary judgment, there also must be no evidence that Kmart had constructive knowledge of the border condition. *Motel 6 G.P., Inc.,* 929 S.W.2d at 3–4.

Unlike the evidence in *Rhyne,* the evidence in this case does not support an inference that Kmart should have known of the condition based on the physical nature of the condition itself. However, constructive knowledge can be found if a reasonably careful inspection would have revealed an unreasonable risk. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983); *Johnson v. Tom Thumb Stores, Inc.,* 771 S.W.2d 582, 587 (Tex.App.—Dallas 1989, writ denied).

A Kmart employee inspected the edging every other day. The nature of this inspection was described as follows:

Q. Okay. Do you know—do you have any personal knowledge of how they would do inspections of he carpet and floor tile?

A. Robert Bender—I have knowledge of Robert Bender. He would come and our the store—whole store daily. He'd take a couple of baskets and run it over the tile and see how it would handle up—how it would hold up to the baskets running over it.

Q. And he would do this every day?

A. He would do it approximately every other day.

Q. Every other day?

A. Yes.

Q. And what I'm understanding is he would take a cart and kind of roll it across the floor tile and the carpet both?

A. The edging.

Q. The edging?

A. Uh-huh. And the carpet.

Q. Would he do this everywhere the edging was in the store?

A. Yes, sir.

Q. And he would do this like every other day?

A. Yes, sir.

While this is evidence that an inspection was undertaken based on the possibility that the border might pull away from the carpet, there is no evidence that such an inspection revealed or should have revealed the border condition that allegedly caused Moore to fall. Although an inference could be made that the inspections undertaken by Kmart in this manner were not reasonable, *see Johnson,* 771 S.W.2d at 589, there is no evidence that a different, reasonably careful inspection would have revealed the condition. Therefore, we agree with the trial court that Moore presented no evidence of actual or constructive knowledge and affirm the trial court's judgment.