**AFFIRM in Part, REVERSE and RENDER in Part; Opinion Filed December 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01448-CV

**GUADALUPE MORENO, Appellant**
**V.**
**C'TARA INGRAM, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-2144**

## OPINION

Before Justices O'Neill, Myers, and Chief Justice Thomas, Retired[1]
Opinion by Justice O'Neill

Appellee C'Tara Ingram brought suit against Guadalupe Moreno for injuries and damages she sustained as the result of an automobile collision. The jury answered questions in favor of Ingram, and the trial court rendered judgment on the jury's verdict. In one issue, Moreno contends the trial court erred by allowing a chiropractor to testify as to the necessity of Ingram's non-chiropractic medical treatment. Because we agree that the chiropractor was not qualified to render an expert opinion on the necessity of certain medical treatment Ingram received, we reverse the trial court's judgment in part.

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

**BACKGROUND**

Ingram and Moreno were involved in an automobile collision on August 1, 2010. Ingram sued Moreno for negligence, seeking damages for personal injury and for damage to her car.

Before trial, Ingram filed several affidavits regarding medical care she received. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001 (West Supp. 2014) (affidavit concerning cost and necessity of services). She contended she received the treatment as a result of the injuries she suffered in the collision. Moreno responded with an affidavit from a doctor controverting the necessity of the treatment. *See id.* The trial court ruled that Ingram's affidavits established the reasonableness of the charges, but not the necessity of the treatment. The affidavits with their related medical records were admitted into evidence at trial, but all references to necessity were redacted from them.

To establish necessity at trial, Ingram offered the testimony of her chiropractor, Dr. Brian Richard Starry. Dr. Starry testified as to the necessity of the chiropractic care Ingram received. Over objection, Dr. Starry also testified as to the necessity of Ingram's treatment by a pain management physician, Dr. Arif Khan, including epidural steroid injections (ESI), and other non-chiropractic treatment Ingram received. During Dr. Starry's testimony, two digital animations were shown to the jury as demonstrative exhibits. The trial court overruled Moreno's objections to the use of these exhibits at trial.

Moreno and Ingram both testified at trial about the collision. Their testimony was contradictory. Ingram testified that she had signaled and was waiting to turn left on to Samuell Boulevard from the parking lot of an apartment complex. She testified that Moreno was behind her, but then drove "around my left side and swiped me and hit me." Moreno, in contrast, testified that she was driving on Samuell Boulevard, and had never been in the parking lot of the apartment complex. She testified that Ingram pulled out of the apartment complex and caused

the collision. Billy Wilson was also driving on Samuell Boulevard at the time and witnessed the collision. He had no connection to either party and was subpoenaed to testify at trial. Wilson's testimony supported Ingram's. Moreno's daughter Tracy Hernandez was a passenger in Moreno's car at the time of the collision. Her testimony at trial supported Moreno's.

After hearing all of the testimony, the jury found that only Moreno's negligence was a proximate cause of the collision. The jury also found damages in the following amounts: 1) expenses for medical care incurred in the past, $25,372.71; 2) past physical pain and mental anguish, $20,000; 3) future physical pain and mental anguish, $60,000; 4) past physical impairment, $20,000, and 5) future physical impairment, $150,000. The trial court awarded the total of these amounts, $275,372.71, to Ingram in the judgment, as well as interest and costs. The trial court heard and denied Moreno's motion for new trial. This appeal followed.

## STANDARD OF REVIEW

In her single issue, Moreno challenges both the admission of Dr. Starry's testimony on non-chiropractic treatment and the legal sufficiency of Dr. Starry's testimony to support the jury's findings. The applicable standard of review was set forth in *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009):

> Generally, rulings on objections as to admissibility of evidence, including whether expert testimony is reliable, are reviewed for abuse of discretion. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex. 2001). But a party may assert on appeal that unreliable scientific evidence or expert testimony is not only inadmissible, but also that its unreliability makes it legally insufficient to support a verdict. *See Volkswagen* [*of America, Inc. v. Ramirez*], 159 S.W.3d [897] at 903 [Tex. 2004].
>
> Unlike review of a trial court's ruling as to admissibility of evidence where the ruling is reviewed for abuse of discretion, in a no-evidence review we independently consider whether the evidence at trial would enable reasonable and fair-minded jurors to reach the verdict. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). Further, a no-evidence review encompasses the entire

record, including contrary evidence tending to show the expert opinion is incompetent or unreliable. *Id.* at 814.

## DISCUSSION

In response to Moreno's issue, Ingram first contends that Moreno failed to preserve any error. She then argues that Dr. Starry was qualified to render expert opinions not only on the chiropractic care she received but also on all of her treatment by medical doctors. We address these arguments in turn.

### A. Preservation of error

Ingram contends that Moreno failed to preserve error because she did not object to the jury charge. The record does reflect, however, that Moreno made repeated, specific objections to Dr. Starry's testimony on the same grounds she raises on appeal.

Out of the presence of the jury, during voir dire examination of Dr. Starry, Moreno's counsel made the following objection:

> Your Honor, before the Jury comes in, I further move that we limit this witness to the scope of chiropractic medicine and any referrals that he made. I don't believe he's also qualified to make any determination regarding the billing records or the treatment that's been done by any of the other medical providers besides himself and his practice.

The trial court responded, "I overrule that." This objection preserved Moreno's complaint. TEX. R. EVID. 103(a)(1) ("When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections."); *see also Cornejo v. Jones*, No. 05-12-01256-CV, 2014 WL 316607, at *2 (Tex. App.—Dallas Jan. 29, 2014, no pet.) (mem. op.) (error preserved under rule 103(a)(1) where

appellant objected to testimony outside presence of jury and trial court overruled objection; "running objection" to testimony not required).[2]

In addition, Moreno's counsel made specific objections to Dr. Starry's testimony, including that it was "beyond the scope of chiropractic medicine," "should be limited to the scope of chiropractic medicine," and was "beyond his scope of practice." Moreno's counsel also objected to Dr. Starry's testimony regarding Ingram's treatment by Dr. Khan, and to his testimony about the medical necessity of the ESI procedures. Additional objections were made to two demonstrative exhibits on the ground that Dr. Starry was not qualified to testify about the procedures they showed. Moreno's counsel also objected, "I don't believe that [Dr. Starry] has demonstrated the knowledge, training, or experience to give any testimony regarding the injections in this case. And any possible demonstrative exhibits related to those." The trial court specifically overruled each of these objections. Moreno's objections were sufficient to preserve her complaint on appeal.

Ingram further contends, however, that Moreno waived any error in the admission of Dr. Starry's testimony about the necessity of Ingram's medical treatment because it was not a controlling issue to be resolved by the jury. She points out that the jury charge did not require the jury to determine whether Ingram's medical expenses were "necessary." Question 3 of the jury charge inquired "What sum of money, if paid now in cash, would fairly and reasonably compensate C'Tara Ingram for her injuries, if any, that resulted from the occurrence in question?" Moreno did not object to this question on the ground that it did not require Ingram's medical expenses to be "necessary." Ingram argues that because Moreno did not object, we must

---

[2] Although the trial court stated that "I'm not going to have a global objection to this witness's testimony," and further instructed Moreno's counsel that "[y]ou need to make your objections to the question and answers," we conclude Moreno's objections were sufficient to preserve her complaint on appeal under rule 103(a)(1), and, in any event, Moreno's counsel made numerous additional specific objections to particular questions and answers in accordance with the trial court's instruction, as we discuss here.

–5–

review the sufficiency of the evidence against the charge as actually given, not against a hypothetically correct charge, citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

The charge as actually given required the jury to determine an amount that would "fairly and reasonably" compensate Ingram for injuries "that resulted from the occurrence in question." On appeal, we may consider "whether the evidence at trial would enable reasonable and fair-minded jurors" to find that the damages awarded would fairly and reasonably compensate Ingram for injuries resulting from Moreno's negligence. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005); *Whirlpool Corp.*, 298 S.W.2d at 641. In addition, whether or not Moreno objected to the charge, we may review her complaint that she was harmed by the erroneous admission of evidence. *See Whirlpool Corp.*, 298 S.W.2d at 641. We conclude that Moreno preserved her complaints that Dr. Starry's testimony was insufficient to support the jury's answer to Question 3, and that his testimony outside the scope of his expertise was improperly admitted.

## B. Expert testimony of chiropractor

We first note that Moreno does not contest Dr. Starry's expertise regarding Ingram's chiropractic treatment. Moreno concedes that a chiropractor is competent to testify as an expert in a personal injury case on matters "within the scope of the profession and practice of chiropractic." *See Watson v. Ward*, 423 S.W.2d 457, 459 (Tex. App.—Tyler 1967, writ ref'd n.r.e.). The jury awarded Ingram $25,372.71 for medical expenses incurred in the past. The record reflects that this amount is one dollar less[3] than the sum of the medical bills in evidence. The expenses for Ingram's chiropractic treatment were $6,025.00. Subtracting this uncontested amount from the jury's award, Moreno challenges the remaining $19,347.71 of the jury's award

---

[3] The jury awarded the amount that Ingram's counsel requested in closing argument.

for past medical expenses.[4] We therefore consider the evidence regarding this remaining amount.

### 1. Voir dire

On voir dire by Moreno's counsel, Dr. Starry testified that he had been licensed as a Doctor of Chiropractic for approximately ten years. Dr. Starry confirmed that under Texas law, the practice of chiropractic does not include "incisive or surgical procedures," prescription of controlled substances, or the use of x-ray therapy or "therapy that exposes the body to radioactive materials." *See* TEX. OCC. CODE ANN. § 201.002(c) (West 2012). Dr. Starry is not a medical doctor.

Dr. Starry conceded that he cannot perform epidural injections. He explained that he refers patients to an orthopedic doctor or a pain management doctor who makes the determination whether or not the patient needs an ESI. He agreed that performing an ESI is beyond the scope of chiropractic medicine. He agreed that he cannot prescribe medicine and is not a licensed radiologist. Dr. Starry also testified that he is not an accident reconstruction expert or an expert in the billing practices of the doctors to whom he refers patients.

Dr. Starry testified that he has educated himself about the procedures used by the doctors to whom he refers his patients. He stated that he can read and interpret MRIs even though he is not licensed to do so. He also testified that his chiropractic education included performing and interpreting xrays. As noted, at the conclusion of this voir dire, the trial court overruled Moreno's objection to the scope of Dr. Starry's testimony.

---

[4] Moreno also argues that all amounts awarded by the jury for past and future pain, mental anguish, and physical impairment were "tainted" by Dr. Starry's testimony. We address this argument below.

## 2.      Testimony before the jury

In the presence of the jury, Dr. Starry testified that he studied for three years at Delmar College in Corpus Christi, Texas, and for two additional years at Texas A&M University in Corpus Christi.  He then attended Parker College of Chiropractic, now called Parker Chiropractic University.  He spent three years at Parker.  He testified that his eight years of schooling was "the same amount as a medical doctor," but with "more radiology and anatomy classes" instead of the "medication classes" taken by medical doctors.

Dr. Starry explained that since he became licensed in 2002, he has practiced in several different chiropractic clinics, but has been in his current position for about seven years.  He has seen "thousands upon thousands" of patients with injuries similar to Ingram's.  He takes 16 hours a year of continuing education courses to keep his license.  He has taken continuing education courses in "physics of motor vehicle accidents and the effect on the human body," "documentation and coding and billing practices," risk management, and Medicare, as well as "how a patient can become injured and proper ways to fix that injury or proper ways to approach it."

Dr. Starry explained that after providing an initial examination, xrays, and treatment to Ingram, he referred her to a pain management doctor, Dr. Khan, who performed ESI.  He testified that Dr. Khan is a board-certified anesthesiologist.  Over objection that the testimony was "beyond the scope of chiropractic medicine," he testified that he was familiar with ESI, although he conceded he could not perform the injections himself.  He explained that he relied on Dr. Khan, who as an anesthesiologist was educated "well beyond what a regular medical doctor takes."  He testified, "[w]hen I refer to Dr. Khan, I trust his ability to properly decide whether or not this patient needs an injection or not."  The basis for his familiarity with ESI was "working with pain management doctors and orthopedic doctors over the years, reading their

–8–

records, [and] reports, [and] doing research on the process itself." He explained that in the first year of his practice, he learned about ESI because he would be referring patients for it. He conceded that he would not make the determination that ESI was appropriate; the pain management doctor would make that decision.

Dr. Starry was asked why the ESIs were necessary. He explained, "I have a lot of faith in Dr. Khan. I've been using him for a lot of years. And if it's his recommendation an epidural steroidal injection needs to be done, he—I trust that he is making the right decision."

Dr. Starry also testified that during the ESI procedure the services of an anesthesiologist were medically necessary. When asked if the medications prescribed to Ingram for pain and muscle relaxation were medically necessary, he replied that "[i]n my trust in Dr. Khan, I believe they're medically necessary." He explained that the prescriptions were necessary to bring down swelling and reduce inflammation. Dr. Starry testified that the treatment he gave Ingram was reasonable and necessary. He testified that the treatment given by the medical providers to whom he referred Ingram was necessary. Moreno's counsel objected to all testimony about the necessity of treatment given by any provider other than Dr. Starry.

Dr. Starry testified that he last saw Ingram for treatment in December, 2010 (approximately two and one-half years before trial) and had no knowledge of her condition after that date. Over objection, Dr. Starry was permitted to testify that disc protrusions such as Ingram's are permanent injuries unless they are surgically repaired. He testified that "future exacerbations and pain" were "likely." Over further objection, he was permitted to testify that to a reasonable degree of medical probability, "patients with these type of disc injuries" were likely to have chronic pain. Their injuries would be exacerbated with age. He testified that in "medical probability," Ingram would need future injections or future surgery.

In the conclusion of his direct testimony, over objection that it was beyond the scope of his practice, Dr. Starry testified that Ingram's injuries were caused by the automobile collision with Moreno.

### 3.    Admission of expert testimony

Under rule 702, Texas Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion or otherwise "[i]f scientific, technical, or other specialized knowledge will assist the trier or fact to understand the evidence or to determine a fact in issue." The proponent of the expert testimony bears the burden of showing that two tests have been met:  1) the expert must be qualified, and 2) the testimony must be relevant and based on a reliable foundation. *E.I. duPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). Where experts rely on experience and training rather than a particular methodology to reach their conclusions, a reviewing court considers whether there is too great an analytical gap between the data and the opinion proffered for the opinion to be reliable. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998).[5]

Not every doctor can qualify as an expert in every given case. *Travelers Ins. Co. v. Wilson*, 28 S.W.3d 42, 48 (Tex. App.—Texarkana 2000, no pet.). Admissibility of the expert's opinion hinges on whether the expert has special knowledge concerning the matter on which his opinion is sought that will assist the trier of fact. *Id.* In *Wilson*, the court concluded an orthopedic surgeon was not qualified to testify regarding the reasonableness and necessity of chiropractic treatment where the surgeon testified that he had no training, education, or experience in chiropractic skills or treatment, and did not testify how he determined when

[5] Each party, in support of different arguments, relies on the case law decided under Chapter 74, Texas Civil Practice and Remedies Code, governing health care liability claims. Chapter 74 provides its own statutory framework and definitions for the expert testimony and reports required for health care liability claims. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351, 74.401–74.403 (West 2011 & Supp. 2014). Case law interpreting the express statutory language of Chapter 74, therefore, does not govern our analysis here.

chiropractic treatment was reasonable and necessary for a patient with chronic pain. *Id.* Where there was no showing that the surgeon's training and experience qualified him to opine about the reasonableness and necessity of chiropractic care, it was within the trial court's discretion to exclude his testimony on that subject. *Id.*

Ingram relies on *Hayhoe v. Henegar*, 172 S.W.3d 642 (Tex. App.—Eastland 2005, no pet.), to argue that a chiropractor may testify about the necessity of medical treatment he or she is not qualified to perform. Dr. Hollander, the chiropractor in *Hayhoe*, testified about surgery performed by Dr. Ramsey, a medical doctor. *See id.* at 645. Dr. Hollander also presented a written report concluding that "the surgical intervention entered into by Dr. Ramsey was the sole result of [the] motor vehicle accident that [Henegar] had been involved with." *Id.* at 645. Relying on Dr. Hollander's 20 years of chiropractic experience, postgraduate work in physics and dynamics, and experience with herniated discs, the court of appeals concluded that the trial court did not abuse its discretion in finding that the chiropractor was "qualified to testify that the car collision caused Henegar's back injury and that the back injury required surgery." *Id.* at 644. The court also concluded that because of Dr. Hollander's 20 years of chiropractic experience, his report and testimony constituted legally and factually sufficient evidence of causation. *Id.* at 645.

In contrast, Dr. Starry's testimony was that he trusted Dr. Khan and others to whom he referred Ingram to make decisions about treatment that Dr. Starry was not qualified to undertake. Dr. Starry testified that from his own study and experience he was familiar with the testing and surgery commonly undertaken for disc protrusions, as well as the types of spinal injuries commonly caused by vehicle collisions. But unlike Dr. Hollander in *Hayhoe*, he did not testify to his own conclusion, based on his own experience and training, that Ingram's back injury required the specific treatment given by the medical providers to whom he referred her. The

–11–

record includes Dr. Starry's testimony that he was not qualified by training, education, or statute to perform the procedures himself, and that he did not make the decisions whether to undertake the treatment, concessions absent from *Hayhoe. See id.; see also Hong v. Bennett*, 209 S.W.3d 795, 804 (Tex. App.—Fort Worth 2006, no pet.) (chiropractor's affidavit not sufficient to controvert reasonableness and necessity of medical doctor's, radiologist's, and pharmacist's services, where affidavit did not state how chiropractor was qualified to opine on those subjects).

A plaintiff may recover only for medical expenses specifically shown to result from treatment made necessary by the negligent acts or omissions of the defendant. *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 839–40 (Tex. 1997). Because Dr. Starry was not qualified to testify that $19,347.71 in non-chiropractic past medical expenses would fairly and reasonably compensate Ingram for injuries that resulted from the collision, the evidence offered at trial did not support this jury finding. *See City of Keller,* 168 S.W.3d at 827; *Whirlpool Corp.*, 298 S.W.3d at 638. The trial court erred by admitting Dr. Starry's testimony regarding non-chiropractic past medical expenses. *See Whirlpool*, 298 S.W.2d at 638. We sustain Moreno's issue in part.

### C. Modification of judgment

Generally, if an appellate court holds there is legally insufficient evidence to support a judgment after trial on the merits, the proper disposition is to reverse and render judgment. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992); *see also* TEX. R. APP. P. 43.3 (when reversing trial court's judgment, court must render judgment that trial court should have rendered). Ingram argues that the only element of damages Moreno challenges is a portion of the award for past medical expenses, and the judgment may be modified to delete the challenged portion.

–12–

Moreno counters that Dr. Starry's testimony "likely improperly tainted" the jury's entire verdict, "coloring the jury's responses to all of the damages questions." She argues that if Dr. Starry's testimony had been properly limited, the jury would not have heard testimony about the risks of EPI treatment or the necessity of non-chiropractic medical treatment. She contends that the jury was likely influenced by the expert testimony in light of the high values the jury placed on all of the damages questions, and that therefore modifying the judgment only as to past medical expenses is an inadequate remedy for the improper admission of Dr. Starry's testimony. Citing *Robinson*, she argues that an expert witness can have an extremely prejudicial impact on a jury, and concludes that the jury's entire verdict was improperly tainted. *See Robinson*, 923 S.W.2d at 553. She contends the trial court's erroneous admission of evidence was harmful error requiring reversal of the judgment in its entirety. *See* TEX. R. APP. P. 44.1(a) (no judgment may be reversed on appeal for error of law unless error complained of "probably caused the rendition of an improper judgment"). Again, we look to the entire record. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

In addition to past medical expenses, the jury awarded damages for past and future physical pain and mental anguish, and for past and future physical impairment. The jury is given a great deal of discretion in awarding an amount of damages it deems appropriate for pain and suffering. *See, e.g., Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 551–52 (Tex. App.—Fort Worth 2006, pet. denied). "The process of awarding damages for amorphous, discretionary injuries such as pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex. App.—San Antonio 2004, no pet.). There must be some evidence to justify the amount awarded, but as long as sufficient evidence exists to support the jury's verdict, an appellate court may not substitute its judgment for that of the jury. *Burry*, 203 S.W.3d at 552. A verdict will be set aside

on appeal only where the record clearly indicates that the award was based on passion, prejudice, or improper motive, or is so excessive as to shock the conscience. *Id.*

As we have explained, Dr. Starry was qualified to testify regarding Ingram's chiropractic care and treatment. His expertise extended to his diagnosis of the injury Ingram sustained to her spine, the pain associated with the injury, the need for future surgery, and Ingram's prognosis. Because these matters were within Dr. Starry's expertise, the jury could rely on his testimony in awarding damages to Ingram.

In addition, Ingram herself testified regarding the pain she suffered and the limitations on her activities as a result of her injuries. She testified that her pain as of the day of trial was "a 5 or a 6" out of ten. She explained that she still suffers pain and still takes medication for pain every day. The bulging discs in her neck send a "tingling sensation down this left arm where I lose usage in these fingers." She testified she also loses sensation in her calf. She cannot do any heavy lifting and cannot stand for long periods of time, affecting activities she formerly enjoyed such as cooking. She cannot lift her grandson, and she loses sleep. She did not have any of these problems before the accident. She began experiencing pain after the collision, and sought chiropractic care within two weeks thereafter. Records of Ingram's treatment by Dr. Starry were admitted into evidence, and reflected the levels of pain Ingram experienced as well as Dr. Starry's diagnosis of the injury and the chiropractic treatment undertaken to address it. In light of this evidence, we cannot say that "the record clearly indicates that the [jury's] award was based on passion, prejudice, or improper motive, or is so excessive as to shock the conscience." *See Burry*, 203 S.W.3d at 552. Further, improper admission of evidence does not as a rule constitute reversible error when there is other competent evidence of the fact in question in the

record. *Gee*, 765 S.W.2d at 397.[6] We affirm the portion of the trial court's judgment awarding to Ingram the amounts found by the jury for past and future physical pain, mental anguish, and physical impairment.

CONCLUSION

We sustain Moreno's sole issue in part. We reverse the portion of the trial court's judgment awarding Ingram $25,373.71 for medical expenses incurred in the past. We render judgment for Ingram in the amount of $6,025.00 for medical expenses incurred in the past, for a total award of actual damages in the sum of $256,025.00, and recalculated prejudgment interest on that amount of $6,734.00. In all other respects, the trial court's judgment is affirmed.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE


131448F.P05

---

[6] Moreno relies on *Hong*, in which the court concluded that a chiropractor was not qualified to testify as to the reasonableness and necessity of a medical doctor's, radiologist's, and pharmacist's services. *See Hong*, 209 S.W.3d at 805. The chiropractor's affidavit was submitted by the defendant to controvert the plaintiff's section 18.001 affidavits of the reasonableness and necessity of services. *Id.* at 802–03 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(f)). The trial court found that the chiropractor was qualified to controvert the plaintiff's chiropractic treatment, but nonetheless admitted both parties' section 18.001 affidavits pertaining to chiropractic care instead of requiring proof of the expenses at trial as required by section 18.001. *Id.* at 804. The court of appeals concluded the admission of the affidavits on the reasonableness and necessity of chiropractic care was error. *Id.* In determining whether the error was harmful, the court explained that it was required to presume that no other testimony was offered at trial to support the chiropractic expenses, because the appellant filed only a partial reporter's record. *Id.* at 805 (citing TEX. R. APP. P. 34.6(c)(4)). Due to the broad-form submission of the damages question, the court was unable to ascertain whether the jury's damages award was based on the erroneously admitted affidavit, and therefore concluded that the error was harmful. *Id.* Here, in contrast, we may review the entire record, and can consider other evidence supporting the jury's verdict. *Gee*, 765 S.W.2d at 397; *see also K Mart Corp. v. Rhyne*, 932 S.W.2d 140, 146 (Tex. App.—Texarkana 1996, no writ) (without showing that chiropractor qualified to opine about cost of surgical treatment, evidence was improperly admitted, but no reversible error because jury's damage award was supported by other evidence).

–15–

## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GUADALUPE MORENO, Appellant

No. 05-13-01448-CV        V.

C'TARA INGRAM, Appellee

On Appeal from the 192nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. 12-2144.
Opinion delivered by Justice O'Neill; Justice Myers and Chief Justice Thomas, Retired, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** and **RENDERED** in part. We **REVERSE** that portion of the trial court's judgment awarding appellant C'Tara Ingram $25,373.71 for medical expenses incurred in the past. We **RENDER** judgment for appellant C'Tara Ingram in the amount of $6,025.00 for medical expenses incurred in the past, for a total award of actual damages in the sum of $256,025.00, and recalculated prejudgment interest on that amount of $6,734.00. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee C'Tara Ingram recover her costs of this appeal and the full amount of the trial court's judgment from appellant Guadalupe Moreno and from the cash deposit in lieu of cost bond. After all costs have been paid, the clerk of the Dallas County District Court is directed to release the balance, if any, of the cash deposit to appellant Guadalupe Moreno.

Judgment entered this 31st day of December, 2014.