**Edward L. LETTE and Karen Lette, Appellants,**

v.

**BAPTIST HEALTH SYSTEM d/b/a Northeast Baptist Hospital, Peter Swensen, M.D. and Star Anesthesia, Appellees.**

No. 04–01–00243–CV.

Court of Appeals of Texas, San Antonio.

May 29, 2002.

Dennis P. Bujnoch, Tinsman, Scott & Sciano, Inc., San Antonio, for Appellant.

Cathy J. Sheehan, Richard N. Francis, Jr., Plunkett & Gibson, Inc., San Antonio, Linda C. Breck, Thomas F. Nye, George G. Brin, Brin & Brin, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice and SARAH B. DUNCAN, Justice.

## OPINION

PAUL W. GREEN, Justice.

Edward and Karen Lette ("the Lettes") appeal the no-evidence summary judgment rendered against them in their medical malpractice law suit. The summary judgment was based on the trial court's conclusion that the Lettes had introduced no evidence to support the causation element of their claim. The Lettes assert the trial court erred in granting the summary judgment because it applied an erroneous standard of proof and because there was evidence of causation. We affirm.

### BACKGROUND

Edward Lette underwent prostate surgery on October 1, 1998. At 9:00 a.m. on October 2nd, he was given 100 milligrams of the blood anticoagulant, Lovenox. Another 100 milligrams of Lovenox was administered at 10:00 p.m. Although Mr. Lette was receiving pain medication through a morphine pump, his post-surgery pain was unrelieved. At 2:05 a.m. on October 3rd, in an effort to relieve his pain, Mr. Lette was given 25 milligrams of Toradol, a non-steroidal anti-inflammatory agent that also has the effect of impairing blood platelet aggregation, which is part of the blood clotting process. The Toradol was administered contrary to the surgeon's orders, but was consistent with the anesthesiologist's orders. Later that same day, Mr. Lette was required to undergo a second surgery to remove a hematoma, or blood clot, caused by arterial bleeding in his pelvic area. Mr. Lette subsequently developed a condition known as complex regional pain syndrome which was associated with the hematoma. Mr. Lette claims the arterial bleeding and resulting injury were caused by the improper post-surgery administration of the Toradol, which he says prevented his blood from properly clotting.

### STANDARD OF REVIEW

We apply the usual standard of review for no-evidence summary judgments, viewing the evidence in the light most favorable to the respondent against whom the summary judgment was rendered. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

### PROXIMATE CAUSATION

 To establish proximate cause, a plaintiff must prove foreseeability and cause-in-fact. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). Cause-in-fact is established by showing that the negligence is a substantial factor in bringing about the harm and without which the harm would not have occurred. *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex.1993). In other words, it must be shown that "but for" the negligence, the injury would not have occurred. *Greene v. Thiet*, 846 S.W.2d 26, 30 (Tex.App.-San Antonio 1992, writ denied). In medical malpractice cases, the causal connection between the negligence and the injury must be based on expert testimony establishing "reasonable medical probability," not mere conjecture, speculation, or possibility. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex.1995). More-

over, other possible causes of the injury must be ruled out with reasonable certainty. *Helm v. Swan,* 61 S.W.3d 493, 497–98 (Tex.App.-San Antonio 2001, pet. denied).

## DISCUSSION

The question is whether there is probative medical evidence that Mr. Lette's injury would not have occurred but for the administration of the Toradol. There is no direct evidence on this point; that is, there is no expert testimony that, within a reasonable degree of medical probability, the Toradol caused Mr. Lette's arterial bleeding. Indeed, the medical testimony pointedly avoids making that conclusion.

The most favorable medical testimony comes from Dr. Joel Moake, a hematologist, who testified that when the Toradol was administered to Mr. Lette, "it was not helpful and it probably potentiated, either caused or potentiated bleeding." [1] But he was unable to say whether the Toradol actually precipitated Mr. Lette's arterial bleeding or only made it harder for the blood to clot. And regarding the latter possibility, Dr. Moake said Mr. Lette's ability to clot was already somewhat impaired by the Lovenox that remained in his system when the Toradol was introduced.[2] Accordingly, he was unable to quantify what additional effect the Toradol

would have had on Mr. Lette's ability to clot. Other expert testimony offered nothing more favorable to the Lettes on the causation issue.

The Lettes contend, however, that causation may be supported by circumstantial evidence and factual inferences that can reasonably be drawn from the evidence. They contend that, when considering the time-line of events and the testimony regarding the therapeutic effects of the various drugs administered to Mr. Lette, it is more likely than not that the Toradol caused Mr. Lette's arterial bleeding. As superficially compelling as this argument is, it nonetheless fails to satisfy the well-established standard for proof of causation in medical negligence cases.

The Lettes' own medical experts were unable to render an unequivocal opinion that the Toradol caused Mr. Lette's arterial bleeding and resulting injury. Consequently, any conclusions drawn from the time-line of events and testimony concerning the therapeutic effects of Toradol would necessarily be based on mere conjecture, speculation and possibility, a standard of proof that is far below that which is permitted by law. Accordingly, the circumstantial evidence relied on by the Lettes amounts to no more than a scintilla of evidence of causation and is thus legally insufficient.[3]

---

1. The "either/or" choice offered by Dr. Moake fails to quantify the degree to which the administration of the Toradol was related to the arterial bleed; that is, whether the Toradol was a remote, minor or substantial factor in causing the bleeding to occur. Accordingly, the testimony fails to meet the standard required for proof of medical causation. *See Sisters of St. Joseph of Texas v. Cheek,* 61 S.W.3d 32, 36–37 (Tex.App.-Amarillo 2001, pet. denied) (testimony that acts or omissions "caused or contributed to" death leaves fact finder to speculate on causation and is legally insufficient).

2. Because he had an artificial heart valve, Mr. Lette had been on a program of oral coumadin, an anticoagulant, to prevent blood from clotting around his heart valve. The coumadin was discontinued a week before the prostate surgery was performed and was resumed on October 3. According to medical testimony, the coumadin could not have been affecting Lette's blood clotting ability when the arterial bleeding occurred.

3. The dissent concludes that "circumstantial evidence was presented in this case, supported by medical literature, from which rea-

CONCLUSION

After reviewing all the medical evidence tending to favor the Lettes, and disregarding all evidence to the contrary, we find no probative evidence to support the causation element of their claim. Accordingly, the issues are overruled and the judgment of the trial court is affirmed.

Dissenting opinion by PHIL HARDBERGER, Chief Justice.

PHIL HARDBERGER, Chief Justice.

I respectfully dissent from the majority's finding that no probative evidence supports the causation element of the Lettes' medical malpractice claim.

In a medical malpractice case, the plaintiff must establish a causal connection based on "reasonable medical probability," not mere conjecture, speculation or possibility. *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex.1995); *Bradley v. Rogers,* 879 S.W.2d 947, 953–54 (Tex.App.-Houston [14th Dist.] 1994, writ denied). However, a plaintiff is not required to establish causation in terms of medical certainty and is not required to exclude every other reasonable hypothesis. *Bradley,* 879 S.W.2d at 954. A possible cause becomes a probable cause when it becomes more likely than not that the injury was a result of its action in the absence of other reasonable causal explanations. *Bradley,* 879 S.W.2d at 954. "The trier of fact may decide the issue of proximate causation in medical malpractice cases when: (1) general experience and common sense will

enable layman to determine the causal relationship between the event and the condition; (2) scientific principles, usually proved by expert testimony, establish a traceable chain of causation from the condition back to the event; and (3) a probable causal relationship is shown by expert testimony." *Id.* Proximate cause, like any other ultimate fact, may be established by circumstantial evidence. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 755 (Tex. 1975).

The issue in this appeal is whether evidence was presented from which reasonable minds could draw an inference that the administration of the Toradol was a substantial factor in bringing about Mr. Lette's bleeding complications and without which the harm would not have occurred. *Kramer v. Lewisville Memorial Hosp.,* 858 S.W.2d 397, 400 (Tex.1993); *Bradley,* 879 S.W.2d at 953. The Lettes are not required to exclude all possibility that the bleeding complications occurred other than as they allege or every other reasonable hypothesis. *Farley v. M M Cattle Co.,* 529 S.W.2d at 755; *Bradley,* 879 S.W.2d at 954. The Lettes must show only that the greater probability is that the Toradol caused the bleeding complications. *Farley,* 529 S.W.2d at 755–56. In reviewing whether the Lettes met this burden, we consider only the evidence favorable to the Lettes, disregarding all contrary evidence and inferences. *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

---

sonable minds could draw an inference that the administration of the Toradol was a substantial factor in bringing about Mr. Lette's bleeding complications...." Dissenting op. at ——. The problem with this statement is that the doctors who were aware of the time-line of events, and of the medical literature describing the therapeutic effects of the various medications, refused to make the causal con-

nection the dissent says a jury should be allowed to make. It is precisely because a jury is not qualified to draw medical conclusions that expert testimony is required on the element of causation. In fact, with the exception of the negligence *per se* cases, it is hard to imagine a medical malpractice case where circumstantial evidence alone would be sufficient to raise an issue on causation.

Mr. Lette's surgery was performed on October 1, 1998. Mr. Lette did not begin to experience complications until 5:00 a.m. on October 3, 1998.

Dr. Joel Moake, a hematologist testified that the effect of Lovenox peaks or is at its maximum effective level a few hours after it is administered. Dr. Moake further testified that the effect of Lovenox would be clinically inconsequential twelve hours after it is administered. Mr. Lette received the first dose of Lovenox at 9:00 a.m. on October 2nd. The Lovenox administered at 9:00 a.m. on October 2nd peaked at 11:00 a.m. on October 2nd, Mr. Lette did not begin to experience complications until 18 hours later—when the effect of the first dose of Lovenox was clinically inconsequential. Mr. Lette received a second dose of Lovenox at 10:00 p.m. on October 2nd. The second dose of Lovenox peaked at its maximum effective level at 12:00 a.m. on October 3rd, Mr. Lette did not begin to experience complications until five hours later as the effect of the Lovenox was dissipating.

Dr. Moake testified that Coumadin takes 3–4 days to reach therapeutic levels and the effect of Coumadin on clotting ability after twelve hours is clinical inconsequential. Mr. Lette received Coumadin at 12:35 a.m. on October 3rd. Between the time the Coumadin was administered and the time Mr. Lette began experiencing his complications four and one-half hours later, the effect of the Coumadin was clinical inconsequential.

The medical literature describing Toradol was attached as an exhibit to the deposition of James Clark Garriott, Ph.D. It states, "Following single oral doses of 2.5 mg to 200 mg, a 75% to 100% inhibition in platelet aggregation occurred within 3 hours." Mr. Lette received Toradol at 2:05 a.m. on October 3rd. Three hours later, Mr. Lette began experiencing his complications. The timing of the events based on the medical literature and expert testimony regarding the effect of the various drugs administered to Mr. Lette is circumstantial evidence that the Toradol was a substantial factor in bringing about Mr. Lette's complications and without which the harm would not have occurred. Dr. Moake testified that with a reasonable degree of medical probability the Toradol caused or potentiated bleeding.

Dr. Moake testified regarding the manner in which blood clots. First, the blood platelets, a cellular element, stick to the side of the blood vessel that is injured and cohere or stick together, which is the first part of the clot. Second, the formation of fibrin strands over the platelet clump hold the platelets down over the injured site. Toradol is an antiplatelet agent that interferes with platelet clumping (the first step in clotting). Lovenox and Coumadin are anticoagulants that interfere with fibrin formation (the second step of clotting). The administration of the Toradol prevented the first step of the clotting from occurring. By preventing the first step, the administration of the Toradol prevented any chance that the blood would clot, thereby depriving Mr. Lette of more than a 50% chance of avoiding the harm by the clotting of his blood.

In its standard of review, the majority relies on *Helm v. Swan* to contend that "other possible causes of the injury must be ruled out with reasonable certainty." 61 S.W.3d 493 (Tex.App.-San Antonio 2001, pet. denied). However, the *Helm* court relied heavily on: (1) the absence of medical literature to support the expert's opinion that "an eight or thirteen hour delay in giving fluid therapy prevents or lessens the complications of severe necrotizing pancreatitis;" and (2) the existence of medical literature to support the opinion that some patients suffer the complication of

severe necrotizing pancreatitis even with prompt fluid resuscitation after the surgical procedure undertaken in that case. 61 S.W.3d at 497. Therefore, in *Helm*, no medical literature could be relied upon to support the plaintiff's theory regarding the cause of the injury, i.e. lack of prompt fluid therapy, and medical literature could not exclude the possibility that the severe necrotizing pancreatitis was an unavoidable complication of the surgical procedure regardless of the defendants' actions.

Unlike *Helm*, Dr. Moake expressly relied on medical literature regarding the effect of the various drugs administered to support his opinion that the effect of the other medications was "clinical inconsequential" and was "dissipating." No medical literature was introduced to support a theory that Mr. Lette would have developed the bleeding complications simply based on the nature of his surgical procedure independent of the administration of the Toradol. Unlike *Helm*, circumstantial evidence was presented in this case, supported by medical literature, from which reasonable minds could draw an inference that the administration of the Toradol was a substantial factor in bringing about Mr. Lette's bleeding complications and without which the harm would not have occurred.

Because the majority concludes otherwise, I respectfully dissent.