COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-016-CV

 

 

SHIOLENO INDUSTRIES, INC.                                              APPELLANTS

 AND APPELLEES

 

                                                   V.

 

COLUMBIA MEDICAL CENTER OF ARLINGTON                          APPELLEES

SUBSIDIARY, L.P. AND COLUMBIA NORTH                     AND APPELLANTS

TEXAS
SUBSIDIARY, GP, LLC D/B/A 

MEDICAL
CENTER OF ARLINGTON

 

                                              ------------

 

            FROM
THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Shioleno Industries, Inc.
appeals a summary judgment granted in favor of Columbia Medical Center of
Arlington Subsidiary, L.P. and Columbia North Texas Subsidiary, GP, LLC d/b/a
Medical Center of Arlington (collectively, Athe Hospital@).  We affirm.

                                            Background

This dispute arises out of
the Hospital=s alleged
failure to inform Shioleno that one of its employees, Tommy Stroman, tested
positive for cocaine and alcohol while receiving treatment at the Hospital
immediately after suffering an on-the-job injury.

Shioleno is a furniture
manufacturing company.  On May 31, 2002,
Stroman injured himself while operating a saw at Shioleno=s factory.  Stroman was
transported to the Hospital for treatment. 
Shioleno faxed several documents to the Hospital, including a request that
the hospital give Stroman a drug and alcohol test, which Shioleno required for
all on-the-job injuries.   Shioleno also
provided the Hospital with its workers= compensation insurance carrier=s information on the day of the injury.   

The Hospital tested Stroman
for drugs and alcohol, and the test was positive for alcohol and cocaine
metabolites.  But the Hospital did not
release the test results to Shioleno, despite Shioleno=s oral and written requests for the test results. 








Shioleno terminated Stroman
when he reported back to work in August 2002, and Stroman filed claims for
workers= compensation and unemployment benefits.  Shioleno contested the claims, but Stroman
ultimately prevailed.[2]  Shioleno contends that its workers= compensation insurance premiums increased as a result of Stroman=s workers=
compensation claim and that it incurred expenses and attorney=s fees contesting his unemployment insurance claim. 

During the employment
benefits disputes, Shioleno obtained a copy of Stroman=s drug test results through its workers= compensation carrier.  Shioleno
contends that it would have prevailed against Stroman=s benefits claims, and its 
insurance premiums would not have increased, if the Hospital had
furnished the test results in a timely manner. 








Shioleno sued the Hospital
for breach of contract, negligence, and DTPA violations.[3]  The Hospital filed two motions for summary
judgment.  In its first motion, the
Hospital argued, among other things, that it was prohibited by law from
disclosing Stroman=s drug-test
results to Shioleno because Shioleno never provided the hospital with a valid
medical records authorization.  In its
supplemental motion for summary judgment, the Hospital argued, among other
things, that there was no evidence of essential elements of Shioleno=s DTPA claim.  The trial court
granted the Hospital=s first
motion in part and its supplemental motion in its entirety.  Shioleno appealed, and the Hospital filed a
cross-appeal, arguing that the trial court erred by failing to grant its first
summary judgment motion in its entirety.

                                      Standards of Review

Under rule 166a(c), a
defendant who conclusively negates at least one essential element of a cause of
action is entitled to summary judgment on that claim.  IHS Cedars Treatment Ctr. of Desoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars Treatment
Ctr., 143 S.W.3d at 798. 








After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) &
cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio
1998, pet. denied). 

                                             Discussion

A.     Negligence and Breach of
Contract

Shioleno sued the Hospital
for negligence, breach of contract, and DTPA violations.  The trial court granted the Hospital=s first motion for summary judgment on the ground that Shioleno did
not furnish the Hospital with a valid authorization to disclose the test
results.  For the reasons discussed
below, we agree that Shioleno did not furnish a valid authorization and
therefore hold that the Hospital was entitled to summary judgment on Shioleno=s negligence and contract claims.

 

 








1.     Did Shioleno furnish a
valid disclosure authorization?

A hospital or an agent or
employee of a hospital may not disclose healthcare information to any person
other than the patient or the patient=s legally authorized representative without the written authorization
of the patient or the patient=s legally authorized representative. 
Tex. Health & Safety Code
Ann. ' 241.152(a)
(Vernon 2001).  A disclosure
authorization is valid only if it (1) is in writing, (2) is dated and signed by
the patient or the patient=s legally authorized representative, (3) identifies the information to
be disclosed, (4) identifies the person or entity to whom the information is to
be disclosed, and (5) is not contained in the same document that contains the
consent to medical treatment obtained from the patient.  Id. ' 241.152(b).  A disclosure
authorization is valid until the 180th day after the date it is signed unless
it provides otherwise or unless it is revoked. 
Id. '
241.152(c).  A patient=s healthcare information may be disclosed without the patient=s authorization if, among other things, the disclosure is to
facilitate reimbursement to a hospital, other health care provider, or the
patient for medical services or supplies. 
Id.  ' 241.153(16) (Vernon Supp. 2006).

Shioleno contends that the
following documents, when read together, satisfy section 241.152(b)=s requirements for a valid authorization:








1.                 
The employee handbook confirmation signed by Stroman on
November 30, 2001, along with the handbook=s
substance abuse policy, that Shioleno faxed to the Hospital on the day of the
accident.  Shioleno=s substance abuse policy states that
Shioleno may direct an employee to submit to a drug and alcohol test and that
any employee refusing such a test is subject to immediate termination.  Shioleno concedes that Stroman signed the
handbook confirmation 181 days before his injury. 

 

2.                 
An AAuthorization
for Examination@ that
states, in its entirety,

 

                                                  SHIOLENO
INDUSTRIES, INC.

                                                       [Address
and phone number]

 

                                          AUTHORIZATION
FOR EXAMINATION

 

NAME:
TOMMY C STROMAN      SSN: [Omitted]

 

SERVICES REQUESTED:

 

INJURY/ILLNESS CARE

 

[X] Work Related Injury

 

Drug Screen   [X]
Non-DOT

Alcohol Screen            [X]

 

Authorized by: /s/ AO Shioleno     Date 5-31-02. 

 

3.                 
A hospital form titled AConditions
of Admission and Authorization for Medical Treatment@
signed by Stroman on the date of the accident. 
The document does not authorize the release of medical information.  Shioleno does not explain the purported
significance of this document to the valid-authorization issue, and its
significance is not apparent from the face of the document itself.

 








4.                 
A Hospital document titled AAuthorization
for Release of Information/Health Care Information@
signed by Stroman on the day of the accident, which included the following
statement: AIf my
injury is work related, I authorize the Hospital to release any information
from my medical records to my employer, ________________ (Name of Employer)
and/or its designee.@


 

5.                 
A document from LabCorp, the laboratory that
administered the drug test, titled AChain
of Custody Form@ and
signed by Stroman.  The form lists AShioleno Industries@ on a line labeled ACompany Name,@
but lists the Hospital=s
name and address in a box labeled AEmployer
Name, Address, and I.D. No.@


 

6.                 
A form printed on Shioleno letterhead stating that Athis is a workers= compensation claim@ and asking the Hospital to bill
Shioleno=s workers= compensation insurance carrier.  The form is signed by Shioleno=s human resources officer and dated the
day of Stroman=s
accident. 

 








None of these documents, by itself, meets the
statutory requirements for a valid authorization.  The Hospital=s
AAuthorization for Release of
Information/Health Care Information@
comes closest; it is in writing, is dated, was signed by Stroman, identifies
the information to be released for a work-related injury (Aany information from my medical records@), and is not contained in the same document
as the consent to treatment.  But it does
not specifically identify the entity to whom the Hospital may disclose the
information.  See   Tex.
Health & Safety Code Ann. '
241.152(a)(4).  Instead, it merely authorizes
the release of information to Amy
employer, __________________________,@
and the space provided for identifying the employer was left blank.  Thus, even the AAuthorization
for Release of Information/Health Care Information@
did not authorize the release of Stroman=s
medical information to Shioleno.

Shioleno argues that the other documents listed
above put the Hospital on notice that Shioleno was Stroman=s employer and implicitly supplied the
information missing from the AAuthorization
for Release of Information/Health Care Information.@  Shioleno reasons that nothing in the statute
mandates that  all of the elements of a
valid authorization must be contained in a single document; therefore, the cited
documents should be read together to form a valid authorization.








While Shioleno is correct that the statute does
not explicitly require that all of the elements of a valid authorization be
contained in a single document, we reject its argument that the documents in
this case, even when read together, form a valid authorization.  The sine qua non of a valid medical-records
authorization is the patient=s
consent to release specific information to a specific person, hence the
requirement that the authorization be signed by the patient.  See id. '
241.152(b)(2).  Therefore, even assuming
that several documents read together may form a valid authorization, any single
document cannot be a part of a valid authorization unless it is signed by the
patient and somehow reflects the patient=s
consent to the disclosure of confidential medical information.  To hold otherwise would effectively write the
patient-signature requirement out of the statute.

Of the documents identified by Shioleno as jointly
forming a valid authorization, two that identify Shioleno as Stroman=s employer were also signed by Stroman.  But those two documents cannot be part of a
valid authorization for other reasons. 
The first document is the confirmation page of Shioleno=s employee handbook.  It identifies Shioleno as the employer and
bears Stroman=s
signature.  But as Shioleno concedes,
Stroman signed it more than 180 days before his injury and drug test; thus, it
cannot be a part of a valid authorization. 
See id. '
241.152(c).  And even if Stroman had
signed the confirmation page within 180 days of the drug test, nothing in the
document suggests that Stroman consented to the release of confidential medical
information.








The second document is the LabCorp chain-of-custody
form.  It lists AShioleno
Industries@ on the ACompany Name@
line, was signed by Stroman on the date of the accident, and authorizes the
laboratory to release the test results to Athe
company identified on this form.@  But the form also contains a consent to
treatmentCAI authorize the collection of this
specimen for the purpose of a drug screen@Cthus running afoul of the statute=s prohibition against a disclosure
authorization in the same document as a consent to treatment.  See id. '
241.152(b)(5).  And even if it was a valid
authorization, the form authorizes LabCorp, not the Hospital, to release
Stroman=s records
to Shioleno.

The bottom line is this: None of the documents,
read alone, constitutes a statutorily-valid authorization.  The document that comes closest to a valid
authorization does not identify Shioleno as the entity to whom the Hospital
could release Stroman=s
medical information, and none of the other documents  can provide that missing element.  Therefore, we hold as a matter of law that
Shioleno did not provide, and the Hospital did not otherwise have, a valid
authorization that would allow the Hospital to disclose Stroman=s drug-test results to Shioleno.

Having concluded that Shioleno did not furnish a
valid disclosure authorization to the Hospital, we now consider the effect of
that conclusion on Shioleno=s
negligence and contract claims.

2.         Negligence








The common law doctrine of
negligence consists of three elements: (1) a legal duty owed by one person to
another; (2) a breach of that duty; and (3) damages proximately resulting from
the breach.  Greater Houston Transp.
Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  The threshold inquiry in a negligence case is
duty.  Id.  The plaintiff must establish both the
existence and violation of a duty owed to the plaintiff by the defendant to
establish liability in tort.  Id.  Whether a duty exists is a question of law
for the court to decide from the facts surrounding the occurrence in
question.  Timberwalk Apartments,
Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998); Otis Eng=g Corp. v. Clark, 668 S.W.2d 307, 312
(Tex. 1983).

Because Shioleno did not
provide a valid disclosure authorization to the 
Hospital, the Hospital had no duty to disclose Stroman=s drug-test results to Shioleno. 
Indeed, the very inverse is true: The Hospital had a statutory duty not
to disclose Stroman=s medical
information to Shioleno.  As we noted
above, section 241.152(a) provides that Aa hospital may not disclose health care information about a patient to
any person other than the patient . . . without the written authorization of
the patient.@  Tex.
Health & Safety Code Ann. ' 241.152(a).  Shioleno
argues that the Hospital could voluntarily assume a duty to disclose the test
results despite section 241.152(a)=s prohibition, but it cites no authority for the proposition that the
law will impose a duty to perform an act prohibited by statute, and,
unsurprisingly, our own research finds none. 









Shioleno also argues that
even if the authorization was invalid, the Hospital had a duty to release the
drug-test results to Shioleno because it orally contracted to do so.  This argument fails because of the Acon-tort@ rule:  A cause of action for negligence cannot be
based on an allegation that a party failed to perform duties subsumed in a
contract because such an action sounds in contract and not tort.  See Sw. Bell Tel. Co. v. DeLanney, 809
S.W.2d 493, 494‑95 (Tex. 1991).[4]

We hold that as a matter of
law the Hospital owed Shioleno no duty to disclose Stroman=s drug test results in the absence of a valid disclosure
authorization.  Therefore, the trial
court did not err by granting summary judgment on Shioleno=s negligence claim.

3.     Breach of Contract








Shioleno alleged that it
entered into a contract with the Hospital to test Stroman for drugs and that
the Hospital breached the contract by failing to disclose the test results to
Shioleno.  Assuming for the sake of argument
that the parties entered into such a contract, Shioleno=s claim for breach fails as a matter of law because it did not furnish
a valid disclosure authorization to the Hospital.  The purported contract either contemplated
the disclosure of the test results with a valid authorization or without a
valid authorization.  If the former, the
Hospital=s performance was excused because Shioleno=s failure to furnish a valid authorization prevented the Hospital from
disclosing the test results.  See
Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.CHouston [1st Dist.] 2003, pet. denied) (APrevention of performance by one party excuses performance by the
other party, . . . .@).  If the latter, then the purported contract is
void because section 241.152(a) prohibits disclosure without a valid
authorization.  See Dominguez v. Trent,
836 S.W.2d 677, 679 (Tex. App.CEl Paso 1992, no writ) (AIt is well settled that a contract which cannot be performed without
violating the law is void.@) (citing Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146, 148‑49
(Tex. 1947)).

We therefore hold that
Shioleno=s failure to furnish a valid disclosure authorization to the Hospital
defeats its breach of contract claim as a matter of law.

B.     DTPA Claims








Shioleno alleged that the
Hospital violated the Deceptive Trade Practices Act by knowingly
misrepresenting that it would disclose Stroman=s drug-test results to Shioleno and that the misrepresentation was a
false, misleading, and deceptive act and an unconscionable action.  See Tex.
Bus. & Com. Code Ann. ' 17.50(a)(1), (3) (Vernon Supp. 2006).[5]  In its supplemental motion for summary
judgment, the Hospital asserted that there was no evidence that it made any
false statement to Shioleno.  

As summary judgment evidence
of the Hospital=s alleged
misrepresentation that it would disclose the test results, Shioleno produced
the following evidence:

$                  
Excerpts from Stewart Pike=s
deposition testimony.  Pike testified
that he was at the Hospital with Stroman on the day of the accident.  As he left, one of the Hospital=s
nurses told him that the Hospital would perform the drug test.  

 

$                  
Excerpts from Anthony Shioleno=s
deposition testimony.  Shioleno testified
that one of his employees, Sarah Hain, spoke with AMaija@ or
another Hospital employee and requested the drug test results on two or three
occasions.[6]  








At the very most, this evidence shows that the
Hospital agreed to test Stroman and that Shioleno requested the test
results.  It is no evidence that the
Hospital misrepresented that it would furnish the test results to
Shioleno.  It is undisputed that the
Hospital did administer the test.  Thus,
there is no evidence in the summary judgment record of a misrepresentation that
would support Shioleno=s DTPA
claim, and the trial court did not err by granting the Hospital=s supplemental summary judgment motion on that claim.

                                             Conclusion

We hold that the trial court
did not err by granting summary judgment on all of Shioleno=s claims.  Therefore, we
overrule Shioleno=s sole
issue.  We do not reach the Hospital=s issue, in which it argues that the trial court erred by failing to
grant a complete summary judgment based on the Hospital=s first motion.  See Tex. R. App. P. 47.1.  We affirm the trial court=s judgment.

 

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED:  March 15, 2007











[1]See Tex. R. App. P. 47.4.





[2]See Shioleno
Indus., Inc. v. Tex. Workforce Comm=n, No.
02-05-00227-CV, 2006 WL 1452642 (Tex. App.CFort Worth May 25, 2006, no
pet.) (mem. op.).





[3]Shioleno
also sued the hospital for breach of the duty of good faith and fair dealing,
but has not appealed that claim. 





[4]We
will consider Shioleno=s
breach of contract claims in the next section of this opinion.





[5]Section
17.50(a)(1) creates a cause of action for false, misleading, and deceptive acts
that are specifically enumerated in section 17.46(b)=s Alaundry
list.@  See id. '
17.50(a)(1).  Shioleno did not identify
any specific provisions of section 17.46(b) allegedly violated by the Hospital
in its trial court pleadings or its brief in this court, and it is difficult to
see how its allegations fall within the acts prohibited by section
17.46(b).  See id. ' 17.46(b)
(Vernon Supp. 2006).





[6]The
Hospital objected to this testimony as hearsay, but the trial court did not
sustain the objection, and the Hospital did not appeal the trial court=s
ruling.