COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-016-CV

SHIOLENO INDUSTRIES, INC. APPELLANTS

 AND APPELLEES

V.

COLUMBIA MEDICAL CENTER OF ARLINGTON APPELLEES

SUBSIDIARY, L.P. AND COLUMBIA NORTH AND APPELLANTS

TEXAS SUBSIDIARY, GP, LLC D/B/A 

MEDICAL CENTER OF ARLINGTON

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Shioleno Industries, Inc. appeals a summary judgment granted in favor of Columbia Medical Center of Arlington Subsidiary, L.P. and Columbia North Texas Subsidiary, GP, LLC d/b/a Medical Center of Arlington (collectively, “the Hospital”).  We affirm.

Background

This dispute arises out of the Hospital’s alleged failure to inform Shioleno that one of its employees, Tommy Stroman, tested positive for cocaine and alcohol while receiving treatment at the Hospital immediately after suffering an on-the-job injury.

Shioleno is a furniture manufacturing company.  On May 31, 2002, Stroman injured himself while operating a saw at Shioleno’s factory.  Stroman was transported to the Hospital for treatment.  Shioleno faxed several documents to the Hospital, including a request that the hospital give Stroman a drug and alcohol test, which Shioleno required for all on-the-job injuries.   Shioleno also provided the Hospital with its workers’ compensation insurance carrier’s information on the day of the injury.   

The Hospital tested Stroman for drugs and alcohol, and the test was positive for alcohol and cocaine metabolites.  But the Hospital did not release the test results to Shioleno, despite Shioleno’s oral and written requests for the test results. 

Shioleno terminated Stroman when he reported back to work in August 2002, and Stroman filed claims for workers’ compensation and unemployment benefits.  Shioleno contested the claims, but Stroman ultimately prevailed.
(footnote: 2)  Shioleno contends that its workers’ compensation insurance premiums increased as a result of Stroman’s workers’ compensation claim and that it incurred expenses and attorney’s fees contesting his unemployment insurance claim. 

During the employment benefits disputes, Shioleno obtained a copy of Stroman’s drug test results through its workers’ compensation carrier.  Shioleno contends that it would have prevailed against Stroman’s benefits claims, and its  insurance premiums would not have increased, if the Hospital had furnished the test results in a timely manner. 

Shioleno sued the Hospital for breach of contract, negligence, and DTPA violations.
(footnote: 3)  The Hospital filed two motions for summary judgment.  In its first motion, the Hospital argued, among other things, that it was prohibited by law from disclosing Stroman’s drug-test results to Shioleno because Shioleno never provided the hospital with a valid medical records authorization.  In its supplemental motion for summary judgment, the Hospital argued, among other things, that there was no evidence of essential elements of Shioleno’s DTPA claim.  The trial court granted the Hospital’s first motion in part and its supplemental motion in its entirety.  Shioleno appealed, and the Hospital filed a cross-appeal, arguing that the trial court erred by failing to grant its first summary judgment motion in its entirety.

Standards of Review

Under rule 166a(c), a defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798. 

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
Sudan v. Sudan,
  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 

Discussion

A. Negligence and Breach of Contract

Shioleno sued the Hospital for negligence, breach of contract, and DTPA violations.  The trial court granted the Hospital’s first motion for summary judgment on the ground that Shioleno did not furnish the Hospital with a valid authorization to disclose the test results.  For the reasons discussed below, we agree that Shioleno did not furnish a valid authorization and therefore hold that the Hospital was entitled to summary judgment on Shioleno’s negligence and contract claims.

1. Did Shioleno furnish a valid disclosure authorization?

A hospital or an agent or employee of a hospital may not disclose healthcare information to any person other than the patient or the patient’s legally authorized representative without the written authorization of the patient or the patient’s legally authorized representative.  
Tex. Health & Safety Code Ann.
 § 241.152(a) (Vernon 2001).  A disclosure authorization is valid only if it (1) is in writing, (2) is dated and signed by the patient or the patient’s legally authorized representative, (3) identifies the information to be disclosed, (4) identifies the person or entity to whom the information is to be disclosed, and (5) is not contained in the same document that contains the consent to medical treatment obtained from the patient.  
Id. 
§ 241.152(b).  A disclosure authorization is valid until the 180th day after the date it is signed unless it provides otherwise or unless it is revoked.  
Id.
 § 241.152(c).  A patient’s healthcare information may be disclosed without the patient’s authorization if, among other things, the disclosure is to facilitate reimbursement to a hospital, other health care provider, or the patient for medical services or supplies.  
Id.
  § 241.153(16) (Vernon Supp. 2006).

Shioleno contends that the following documents, when read together, satisfy section 241.152(b)’s requirements for a valid authorization:

The employee handbook confirmation signed by Stroman on November 30, 2001, along with the handbook’s substance abuse policy, that Shioleno faxed to the Hospital on the day of the accident.  Shioleno’s substance abuse policy states that Shioleno may direct an employee to submit to a drug and alcohol test and that any employee refusing such a test is subject to immediate termination.  Shioleno concedes that Stroman signed the handbook confirmation 181 days before his injury. 

An “Authorization for Examination” that states, in its entirety,

SHIOLENO INDUSTRIES, INC.

[Address and phone number]

AUTHORIZATION FOR EXAMINATION

NAME: TOMMY C STROMAN      SSN: [Omitted]

SERVICES REQUESTED:

INJURY/ILLNESS CARE

[X] Work Related Injury

Drug Screen    [X] Non-DOT

Alcohol Screen [X]

Authorized by: 
/s/ AO Shioleno
     Date 
5-31-02
. 

A hospital form titled “Conditions of Admission and Authorization for Medical Treatment” signed by Stroman on the date of the accident.  The document does not authorize the release of medical information.  Shioleno does not explain the purported significance of this document to the valid-authorization issue, and its significance is not apparent from the face of the document itself.

A Hospital document titled “Authorization for Release of Information/Health Care Information” signed by Stroman on the day of the accident, which included the following statement: “If my injury is work related, I authorize the Hospital to release any information from my medical records to my employer, ________________ (Name of Employer) and/or its designee.” 

A document from LabCorp, the laboratory that administered the drug test, titled “Chain of Custody Form” and signed by Stroman.  The form lists “Shioleno Industries” on a line labeled “Company Name,” but lists the Hospital’s name and address in a box labeled “Employer Name, Address, and I.D. No.” 

A form printed on Shioleno letterhead stating that “this is a workers’ compensation claim” and asking the Hospital to bill Shioleno’s workers’ compensation insurance carrier.  The form is signed by Shioleno’s human resources officer and dated the day of Stroman’s accident. 

None of these documents, by itself, meets the statutory requirements for a valid authorization.  The Hospital’s “Authorization for Release of Information/Health Care Information” comes closest; it is in writing, is dated, was signed by Stroman, identifies the information to be released for a work-related injury (“any information from my medical records”), and is not contained in the same document as the consent to treatment.  But it does not specifically identify the entity to whom the Hospital may disclose the information.  
See 
  
Tex. Health & Safety Code Ann.
 § 241.152(a)(4).  Instead, it merely authorizes the release of information to “my employer, __________________________,” and the space provided for identifying the employer was left blank.  Thus, even the “Authorization for Release of Information/Health Care Information” did not authorize the release of Stroman’s medical information to Shioleno.

Shioleno argues that the other documents listed above put the Hospital on notice that Shioleno was Stroman’s employer and implicitly supplied the information missing from the “Authorization for Release of Information/Health Care Information.”  Shioleno reasons that nothing in the statute mandates that  all of the elements of a valid authorization must be contained in a single document; therefore, the cited documents should be read together to form a valid authorization.

While Shioleno is correct that the statute does not explicitly require that all of the elements of a valid authorization be contained in a single document, we reject its argument that the documents in this case, even when read together, form a valid authorization.  The sine qua non of a valid medical-records authorization is the 
patient’s
 consent to release specific information to a specific person, hence the requirement that the authorization be signed by the patient.  
See
 
id.
 § 241.152(b)(2).  Therefore, even assuming that several documents read together may form a valid authorization, any single document cannot be a part of a valid authorization unless it is signed by the patient and somehow reflects the patient’s consent to the disclosure of confidential medical information.  To hold otherwise would effectively write the patient-signature requirement out of the statute.

Of the documents identified by Shioleno as jointly forming a valid authorization, two that identify Shioleno as Stroman’s employer were also signed by Stroman.  But those two documents cannot be part of a valid authorization for other reasons.  The first document is the confirmation page of Shioleno’s employee handbook.  It identifies Shioleno as the employer and bears Stroman’s signature.  But as Shioleno concedes, Stroman signed it more than 180 days before his injury and drug test; thus, it cannot be a part of a valid authorization.  
See id. 
§ 241.152(c).  And even if Stroman had signed the confirmation page within 180 days of the drug test, nothing in the document suggests that Stroman consented to the release of confidential medical information.

The second document is the LabCorp chain-of-custody form.  It lists “Shioleno Industries” on the “Company Name” line, was signed by Stroman on the date of the accident, and authorizes the laboratory to release the test results to “the company identified on this form.”  But the form also contains a consent to treatment—“I authorize the collection of this specimen for the purpose of a drug screen”—thus running afoul of the statute’s prohibition against a disclosure authorization in the same document as a consent to treatment.  
See id.
 § 241.152(b)(5).  And even if it was a valid authorization, the form authorizes 
LabCorp
, not the Hospital, to release Stroman’s records to Shioleno.

The bottom line is this: None of the documents, read alone, constitutes a statutorily-valid authorization.  The document that comes closest to a valid authorization does not identify Shioleno as the entity to whom the Hospital could release Stroman’s medical information, and none of the other documents  can provide that missing element.  Therefore, we hold as a matter of law that Shioleno did not provide, and the Hospital did not otherwise have, a valid authorization that would allow the Hospital to disclose Stroman’s drug-test results to Shioleno.

Having concluded that Shioleno did not furnish a valid disclosure authorization to the Hospital, we now consider the effect of that conclusion on Shioleno’s negligence and contract claims.

2. Negligence

The common law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach.  
Greater Houston Transp. Co. v. Phillips
, 801 S.W.2d 523, 525 (Tex. 1990).  The threshold inquiry in a negligence case is duty.  
Id.
  The plaintiff must establish both the existence and violation of a duty owed to the plaintiff by the defendant to establish liability in tort.  
Id.
  Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question.  
Timberwalk Apartments, Partners, Inc. v. Cain
, 972 S.W.2d 749, 756 (Tex. 1998); 
Otis Eng’g Corp. v. Clark
, 668 S.W.2d 307, 312 (Tex. 1983).

Because Shioleno did not provide a valid disclosure authorization to the  Hospital, the Hospital had no duty to disclose Stroman’s drug-test results to Shioleno.  Indeed, the very inverse is true: The Hospital had a statutory duty 
not
 to disclose Stroman’s medical information to Shioleno.  As we noted above, section 241.152(a) provides that “a hospital may not disclose health care information about a patient to any person other than the patient . . . without the written authorization of the patient.”  
Tex
. 
Health & Safety Code Ann. 
§ 241.152(a).  Shioleno argues that the Hospital could voluntarily assume a duty to disclose the test results despite section 241.152(a)’s prohibition, but it cites no authority for the proposition that the law will impose a duty to perform an act prohibited by statute, and, unsurprisingly, our own research finds none.  

Shioleno also argues that even if the authorization was invalid, the Hospital had a duty to release the drug-test results to Shioleno because it orally contracted to do so.  This argument fails because of the “con-tort” rule:  A cause of action for negligence cannot be based on an allegation that a party failed to perform duties subsumed in a contract because such an action sounds in contract and not tort.  
See Sw. Bell Tel. Co. v. DeLanney
, 809 S.W.2d 493, 494-95 (Tex. 1991).
(footnote: 4)
 We hold that as a matter of law the Hospital owed Shioleno no duty to disclose Stroman’s drug test results in the absence of a valid disclosure authorization.  Therefore, the trial court did not err by granting summary judgment on Shioleno’s negligence claim.

3. Breach of Contract

Shioleno alleged that it entered into a contract with the Hospital to test Stroman for drugs and that the Hospital breached the contract by failing to disclose the test results to Shioleno.  Assuming for the sake of argument that the parties entered into such a contract, Shioleno’s claim for breach fails as a matter of law because it did not furnish a valid disclosure authorization to the Hospital.  The purported contract either contemplated the disclosure of the test results with a valid authorization or without a valid authorization.  If the former, the Hospital’s performance was excused because Shioleno’s failure to furnish a valid authorization prevented the Hospital from disclosing the test results.  
See Dorsett v. Cross
, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (“Prevention of performance by one party excuses performance by the other party, . . . .”).  If the latter, then the purported contract is void because section 241.152(a) prohibits disclosure without a valid authorization.  
See Dominguez v. Trent,
 836 S.W.2d 677, 679 (Tex. App.—El Paso 1992, no writ) (“It is well settled that a contract which cannot be performed without violating the law is void.”) (citing 
Lewis v. Davis
, 145 Tex. 468, 199 S.W.2d 146, 148-49 (Tex. 1947)).

We therefore hold that Shioleno’s failure to furnish a valid disclosure authorization to the Hospital defeats its breach of contract claim as a matter of law.

B.
 
DTPA Claims

Shioleno alleged that the Hospital violated the Deceptive Trade Practices Act by knowingly misrepresenting that it would disclose Stroman’s drug-test results to Shioleno and that the misrepresentation was a false, misleading, and deceptive act and an unconscionable action.  
See 
Tex. Bus. & Com. Code Ann.
 § 17.50(a)(1), (3) (Vernon Supp. 2006).
(footnote: 5)  In its supplemental motion for summary judgment, the Hospital asserted that there was no evidence that it made any false statement to Shioleno.  

As summary judgment evidence of the Hospital’s alleged misrepresentation that it would disclose the test results, Shioleno produced the following evidence:

Excerpts from Stewart Pike’s deposition testimony.  Pike testified that he was at the Hospital with Stroman on the day of the accident.  As he left, one of the Hospital’s nurses told him that the Hospital would perform the drug test.  

Excerpts from Anthony Shioleno’s deposition testimony.  Shioleno testified that one of his employees, Sarah Hain, spoke with “Maija” or another Hospital employee and requested the drug test results on two or three occasions.
(footnote: 6)  

At the very most, this evidence shows that the Hospital agreed to test Stroman and that Shioleno requested the test results.  It is no evidence that the Hospital misrepresented that it would furnish the test results to Shioleno.  It is undisputed that the Hospital did administer the test.  Thus, there is no evidence in the summary judgment record of a misrepresentation that would support Shioleno’s DTPA claim, and the trial court did not err by granting the Hospital’s supplemental summary judgment motion on that claim.

Conclusion

We hold that the trial court did not err by granting summary judgment on all of Shioleno’s claims.  Therefore, we overrule Shioleno’s sole issue.  We do not reach the Hospital’s issue, in which it argues that the trial court erred by failing to grant a complete summary judgment based on the Hospital’s first motion.  
See 
Tex. R. App. P.
 47.1.  We affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  March 15, 2007

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
See
 
Shioleno Indus., Inc. v. Tex. Workforce Comm’n
, No. 02-05-00227-CV, 2006 WL 1452642 (Tex. App.—Fort Worth May 25, 2006, no pet.) (mem. op.).

3:
Shioleno also sued the hospital for breach of the duty of good faith and fair dealing, but has not appealed that claim. 

4:
We will consider Shioleno’s breach of contract claims in the next section of this opinion.

5:
Section 17.50(a)(1) creates a cause of action for false, misleading, and deceptive acts that are specifically enumerated in section 17.46(b)’s “laundry list.”  
See id
.
 § 17.50(a)(1).  Shioleno did not identify any specific provisions of section 17.46(b) allegedly violated by the Hospital in its trial court pleadings or its brief in this court, and it is difficult to see how its allegations fall within the acts prohibited by section 17.46(b).  
See id
. § 17.46(b) (Vernon Supp. 2006).

6:
The Hospital objected to this testimony as hearsay, but the trial court did not sustain the objection, and the Hospital did not appeal the trial court’s ruling.